IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CENORIN, LLC**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-1745-L** |
| | § | |
| **TACY MEDICAL, INC.,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss, filed June 26, 2012. After carefully reviewing the motion, briefing, pleadings, and applicable law, the court **grants in part and denies** Defendant's Motion to Dismiss (Doc. 7). Defendant's motion as to Cenorin's DTPA claim is **granted**, and this claim is **dismissed with prejudice**. Defendant's motion is **denied** in all other respects.

### I. Procedural and Factual Background

Plaintiff Cenorin, LLC ("Cenorin") brought this action against Tacy Medical, Inc. ("Tacy") on June 5, 2012, based on federal question and diversity jurisdiction. Cenorin asserts claims for: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) alleged violations of the Texas Deceptive Trade Practice Act ("DTPA"); and (4) trademark unfair competition under Texas law.

Cenorin alleges that it owns the trademark registration for Aqua Guard, which is associated with medical dressings and other products used in the medical field. According to Cenorin, Tacy purchased Aqua Armour dressings from iMed Technology Inc. ("iMed") and began selling them to

**Memorandum Opinion and Order - Page 1**

consumers in late 2011. Cenorin alleges that Tacy targeted Cenorin's customers and distributors in its marketing, promotions, and sales efforts. Cenorin contends that the two marks are substantially similar and likely to cause confusion.

Cenorin further alleges that it sued iMed in February 2012, and pursuant to an April 2, 2012 stipulated permanent injunction and order to dismiss, iMed agreed to stop shipping any product. According to Cenorin's pleadings, the injunction also prohibits iMed "and any persons acting in concert or participation with them who receive actual notice of [the] Order by personal service or otherwise" from "using a name, word, term, designation, or mark containing the term AQUA or GUARD, or otherwise using . . . any domain name, trademark, service mark, trade name, corporate name, or business name containing the word AQUA or GUARD, or [AQUAGUARD]." Pl.'s Compl. 6. Cenorin apprised Tacy of the lawsuit against iMed in March 2012, and Tacy indicated that it would stop selling the Aqua Armour product within a reasonable period of time and agreed to attempt to deplete its current inventory before March 23, 2012. Cenorin alleges that Tacy nevertheless used the infringing mark to market, distribute, and sell dressing products at the Forest Park Medical Center in Dallas, Texas, on April 19, 2012. Pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, Tacy seeks dismissal of all of Cenorin's claims except its false designation claim.

## II.     Standard for Rule 12(b)(6) - Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central

to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

**III. Analysis**

    **A. Count I - Trademark Infringement (15 U.S.C. § 1114)**

Tacy contends that Cenorin has failed to allege facts to support a claim for direct, vicarious, or contributory infringement. Tacy asserts that Cenorin has not pled facts supporting any of the

**Memorandum Opinion and Order - Page 4**

factors normally considered by the Fifth Circuit regarding consumer confusion. Tacy further asserts that the allegedly infringing product is used by iMed, not Tacy, and that Tacy merely distributes iMed's product. Tacy therefore contends that it cannot be liable for direct infringement. Tacy contends that because Cenorin has not alleged that Tacy has the right and ability to supervise the infringing conduct and directly benefits from the infringing activity, it cannot be held vicariously liable. Finally, Tacy assserts that it cannot be liable as a contributory infringer because Cenorin has not pled that Tacy knew or had reason to know of the direct infringement by iMed and intentionally induced or contributed to the direct infringement. According to Tacy, for contributory infringement, "there must be direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." Def.'s Br. (internal quotation marks omitted) (quoting *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)).

Cenorin contends that it is not required to plead facts in support of all confusion factors because the Fifth Circuit has held that "the absence or presence of any one factor ordinarily is not dispositive" and a finding of likelihood of confusion need not be supported by a majority of the factors. Def.'s Br. 4 (quoting *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)). Cenorin contends that it has alleged that Tacy's Aqua Armour mark is similar to Cenorin's Agua Guard mark, that Tacy has used the mark without its consent in commerce and in connection with the sale and distribution of water resistant medical dressings in a manner that is likely to cause confusion or mistake. Cenorin contends that it has also alleged that Tacy intentionally used the infringing mark because it agreed not to continue selling products with the infringing mark after being apprised of the lawsuit and injunction against iMed.

A trademark is "any word, name, symbol, or device, or any combination thereof, used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. To assert a claim of trademark infringement, a plaintiff must allege that it is the owner of a registered mark and the defendant's use of the mark creates a likelihood of confusion, mistake, or deception. *See id.* § 1114(1); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008). The plaintiff must also allege that the defendant used the plaintiff's mark in commerce, that is, "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1).

Under the theories of contributory infringement and vicarious infringement, liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Under the doctrine of contributory infringement:

> liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributori[]ly responsible for any harm done as a result of the deceit.

*Inwood Lab. v. Ives Lab., Inc.*, 456 U.S. 844, 853-54 (1982). "A party is liable for contributory infringement when it, 'with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another.'" *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971)). One may be held vicariously liable for an infringing activity even if he is not

the person actually carrying out the infringing activity if he has the right and ability to supervise the activity and also has a direct financial interest in it. *Id*. at 1161.

Here, Cenorin's pleadings satisfy the requirements for trademark infringement under section 1114(1) but not contributory or vicarious liability infringement, and Cenorin does not appear to argue that it has asserted trademark infringement claims based on contributory or vicarious liability. Rather than dismiss Cenorin's trademark infringement claim based on contributory and vicarious liability, the court will permit it to amend its pleadings.

**B.     Count III - DTPA**

Tacy contends that Cenorin is not a consumer under the DTPA because its pleadings do not contain any allegations as to whether Cenorin sought or acquired goods or services from Tacy by lease or purchase, and whether Cenorin's has assets totaling less than $25 million or is owned or controlled by another company with assets exceeding $25 million. Tacy contends that Cenorin cannot allege that it sought to acquire goods or services from it because Cenorin's Aqua Guard product is a competitor to iMed's Aqua Amor product. Tacy thus contends that Cenorin's Complaint at its core is a trademark dispute, not a consumer dispute based on any purchase from Tacy.

Cenorin contends in response that Texas courts have clarified that privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA, and plaintiffs, who are affected by a purchase or harmed by misrepresentations made as part of a sale of goods or services, qualify as consumers even though they are not the direct purchasers. Cenorin contends that it qualifies as a consumer because it was harmed by the misrepresentations that Tacy makes to distributors as part of its sales. Cenorin asserts that by using

a mark confusingly similar to Cenorin's mark, Tacy misrepresents to purchasers its association with Cenorin, thereby falsely representing that Cenorin approves of or endorses its product.

The elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). Whether a person qualifies as a consumer under the DTPA is a question of law for the court to decide. *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App.   San Antonio 2002, pet. denied). The DTPA defines a consumer as:

> an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

*Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 674 (Tex. 1990) (quoting Tex. Bus. & Com. Code Ann. § 17.45(4)). "Business consumers include individuals, partnerships, or corporations who seek or acquire by purchase or lease, any goods or services for commercial or business use." *Eckman*, 784 S.W.2d at 674 (quoting Tex. Bus. & Com. Code Ann. § 17.45(10)). Business consumers with assets of $25,000,000 or more are therefore excluded from DTPA coverage. *Eckman*, 784 S.W.2d at 674.

Cenorin does not address Tacy's contention regarding the $25 million in assets exclusion under the DTPA, and Cenorin's pleadings do not include any factual allegation regarding its assets; however, the court determines that Tacy is not entitled to dismissal on this ground because the Texas Supreme Court in *Eckman* held that "the defendant has the burden to plead and prove the applicability of the $25,000,000 exception to business consumer status as an affirmative defense."

*Id.* at 674-75. The court concludes that Cenorin's DTPA claim nevertheless fails because it does not qualify as a consumer and the cases it relies on are factually distinguishable from the present case. According to Cenorin's theory, it has standing to assert a DTPA claim simply because consumers have purchased Tacy's product and Cenorin was allegedly harmed by the confusion between its product and the one sold by Tacy. Regardless of Cenorin's privity argument, it does not qualify as a consumer simply because any number of unrelated consumers may have purchased Tacy's product. Accordingly, Cenorin has failed to state a claim upon which relief can be granted under the DTPA, and Tacy is entitled to dismissal of this claim.

### C. Count IV - Trademark Unfair Competition

Tacy asserts that the tort of unfair competition functions as an umbrella for claims based on business conduct that is contrary to honest commercial practice and requires the plaintiff to show that the defendant conducted an illegal act in the form of an independent tort and that the tort interfered with the plaintiff's ability to conduct its business. Tacy contends that Cenorin fails to allege any illegal act or independent tort by Tacy that interfered with Cenorin's business. Based on *Taylor Publishing Company v. Jostens, Incorporated*, 216 F.3d 465, 486 (5th Cir. 2000), Cenorin contends that it has stated a claim for unfair competition. The court disagrees.

> The Fifth Circuit in *Taylor* stated that the claim of unfair competition under Texas law:
>
> is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters. The tort requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business. Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort.

*Id.* The court determines that Cenorin has not alleged any independent tort in support of its unfair competition claim. *See id.* Cenorin's unfair competition claim is essentially the same as it federal trademark infringement, and thus there is no independent tort. *EsNtion Records, Inc. v. TritonTM, Inc.*, 3:07-CV-2027-L, 2009 WL 3805827, at *12 (N.D. Tex. Nov. 13, 2009). Cenorin has therefore failed to state a claim upon which relief can be granted for unfair competition. Rather than dismiss Cenorin's unfair competition claim, the court will permit it to amend its pleadings.

### D.    Subject Matter Jurisdiction

Tacy contends that if the court grants its motion to dismiss with regard to Cenorin's federal claims, then the court should dismiss Cenorin's remaining claims for lack of diversity of citizenship. Cenorin responds that even if it failed to allege that none of its members are Florida residents and the court dismisses the federal claims that are the subject of Tacy's motion to dismiss, the court still has subject matter jurisdiction because Tacy has not moved to dismiss Cenorin's federal claim under the Lanham Act. The court's ruling on the motion to dismiss moots this issue, and, as correctly noted by Cenorin, Tacy did not move to dismiss Cenorin's federal claim for false designation. Accordingly, the court has federal question jurisdiction, and neither Tacy's motion nor the court's ruling on Tacy's motion affects the court's subject matter jurisdiction. The court therefore need not addresses the parties' contentions regarding diversity of citizenship.

### IV.    Amendment of Pleadings

Cenorin has requested to amend its pleadings if the court grants in whole or in part Tacy's motion to dismiss. Rule 15(a)(2) of the Federal Rules of Civil Procedure states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*,

371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller* v. *Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Plaintiff has not previously amended its pleadings; however, Cenorin's DTPA claim fails as a matter of law and no amount of artful or creative pleading of facts will permit it to state claims upon which relief can be granted. Thus, further attempts to amend would this claims would be futile. Accordingly, the court will not permit Cenorin to amend its pleadings as to its DTPA claim. The court, however, will permit Plaintiff to file an amended complaint that corrects the deficiencies noted herein with regard to his unfair competition claim and satisfies the requirements for contributory and vicarious liability if it intends to pursue a trademark infringement claim on either of these bases.

## V. Conclusion

For the reasons herein stated, the court **grants in part and denies in part** Defendant's Motion to Dismiss (Doc. 7). Defendant's motion as to Cenorin's DTPA claim is **granted**, and this claim is **dismissed with prejudice**. Defendant's motion is **denied** in all other respects.

**It is so ordered** this 25th day of March, 2013.

Sam A. Lindsay
United States District Judge